# Scholl Ashodian
COUNSELORS AT LAW

the foreclosure defense firm

February 18, 2020

The Honorable Ashely M. Chan
United States Bankruptcy Court for
  the Eastern District of Pennsylvani
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 204
Philadelphia, PA  19107

RE:   In re Bolger; Bankruptcy No. 19-16411-amc
      Bolger v. McCusker, et al.; Adv. Proc. No. 13-00669-amc

Dear Judge Chan:

     Your Honor requested letter briefs in advance of a continued hearing scheduled on March 3, 2020, on issues involved with respect to two motions filed by the Debtor/Plaintiff, Suzanne Bolger.  The first motion filed was the Debtor's Motion Pursuant to Bankruptcy Rules 9023 and 9024, and Fed.R.Civ.P. 59 and 60(b) and (d)(1) for Relief from Order Entered January 7, 2020, granting relief from the automatic stay to JPMorgan Chase Bank, National Association in the Debtor's 2019 main bankruptcy case, Docket No. 19-16411-amc.  The second motion filed was the Plaintiff's Motion Pursuant to Bankruptcy Rules 9023 and 9024, and Fed.R.Civ.P. 59 and 60(b) and (d)(1) for Reconsideration of the Order Entered January 7, 2020, granting the Motion of JPMorgan Chase Bank, National Association to Dismiss Adversary Proceeding [Docket No. 13-00669, filed within Debtor's 2013 main bankruptcy case, Docket No. 13-13214-amc], with consolidated response to JPMorgan Chase Bank, National Association to Dismiss Adversary Proceeding No. 13-00669-amc.

     My recollection is that the idea of briefing certain issues in advance of the continued hearing arose during Ms. Bolger's direct examination because of certain objections made by JPMorgan Chase Bank, National Association (hereinafter "Chase") and because I then raised questions regarding the scope of the hearing on behalf of Ms. Bolger in order to be sure not to miss eliciting testimony on subject areas upon which the Court's decisions on the two motions would turn, while not wasting the Court's time with attempts to elicit testimony that the Court deemed

unnecessary to consider.

As with any brief, whether a full brief or a simpler letter brief such as this, the starting point should to define the questions that require resolution. With regard to the pending matters, this is a two step process from the Debtor/Plaintiff's perspective. First, the Plaintiff/Debtor will set forth what she understands are the issues that the Court has identified that require briefing. Second, she will also set forth additional issues that she believes are germane to the Court's consideration of the two motions.

<u>Truncated Statement of the Case</u>:  Suzanne Bolger purchased her home and small farm at 1575 Doerr Road, Quakertown, PA  18951, with her husband, Charles F. Bolger, in July, 1997.  The couple later separated, and Suzanne Bolger continued to reside in the property, raising the couple's four children as a single mom.  In 2005, a foreclosure case was filed and Charles Bolger was approached by the McCuskers and fell victim, along with approximately forty other families in the area to a foreclosure rescue scam under which, *inter alia*, the Bolgers transferred title to the home and small farm to Jacqueline McCusker.  They believed that the McCuskers were helping them and that they would be able to rent their property back at a reasonable rate for a short period until they got back on their feet, and then repurchase it.  In fact, the McCuskers entered into mortgage loan transactions that they did not intend to repay in order to maximize the cash from each transaction.  Because of the mortgage on 1575 Doerr Road, Ms. Bolger would never be able to recover her home and small farm absent a restitution award or successfully prosecuting Adv. Proc. No. 13-00669-amc.  Debtor/Plaintiff incorporates by reference the federal indictment in Case Docket No. 09-cr-00771-MAM, her Amended Complaint and the Court's Statement of Reasons in Support of Order issued on December 12, 2014, in Adv. Proc. No. 13-00669-amc.

After the Court denied Chase's Motion to Dismiss the Amended Complaint, and both Defendants had answered the Amended Complaint, the parties agreed to participate in Court-sponsored mediation in early 2015.  In the period between early 2015 and the Spring of 2016, the parties engaged in settlement discussions that included not only Chase and Debtor/Plaintiff, but also Chase's title insurance carrier.  They reached agreement on a settlement formula under which Chase would accept payment of $185,000 (later lowered to $184,000), and the title insurance company would pay $35,000 of that amount.  Chase offered to process Ms. Bolger for assumption of the loan entered into by Ms. McCusker, through an application process that would verify Ms. Bolger's claim to regular employment income, after which Chase would approve an assumption of the loan.  Following the assumption, Chase agreed to enter into a loan modification with Ms. Bolger.  (Chase characterizes all of the foregoing as a tentative agreement that was never

consummated, but Debtor/Plaintiff believes it was an enforceable agreement in that Chase made an offer, Ms. Bolger accepted the offer, and then both Ms. Bolger and Chase took a number of actions in reliance upon the agreement they had reached.

At Chase's request Ms. Bolger submitted three separate applications plus other supplementary documents in addition to the three full applications. The applications and documents were submitted over a period of approximately a year and a half, after which Chase informed both Ms. Bolger and the Court that although Chase had made no final decision about allowing Ms. Bolger to assume the McCusker loan, it was unlikely that the assumption application would ultimately be approved by Chase because the circumstances did not fit into "a box" that was customary for Chase. In 2019, Ms. Bolger agreed to apply for and took steps to pursue refinancing of the $149,000 net purchase price with other lenders, since Chase indicated that was preferable to original plan for Ms. Bolger to assume the loan and for Chase to enter into a loan modification with her. Ms. Bolger inquired with several conventional lenders, but was discouraged from pursuing such financing. Counsel then suggested Blue Hub Capital, a community development financial institution ("CDFI") that specializes in assisting prospective borrowers who are facing loss of their homes through foreclosure.

Ms. Bolger began the application process in the Spring of 2019, but the Blue Hub application process takes a long time, and Blue Hub required extensive documentation, submitting about eight separate letters with document requests to Ms. Bolger between May, 2019 and January, 2020. In the meantime, Chase had drafted a prospective settlement document in early 2019. Debtor/Plaintiff rejected the Chase approach, but suggested an alternative that was, for the most part, acceptable to Chase. Chase submitted a revised proposed settlement document to Ms. Bolger in the Spring of 2019. Although it was significantly different than the original settlement offer accepted by Ms. Bolger in 2016, Ms. Bolger agreed to everything except the aspect of the proposal that required her to close on refinancing before the Sheriff's Sale that Chase had scheduled in the meantime for October 11, 2019. According to the Chase proposal, the consequence of Ms. Bolger's failure to close before the Sheriff's Sale was that she would not only lose title to her home and small farm, with no hope of recovering it even if she succeeded with the Blue Hub application after the Sheriff's Sale, but she would be forced to vacate the premises and give up all possessory interest in the property within 15 days of the Sheriff's Sale – even before a deed could be issued.

Although the Court expressed some sentiments indicating that according to the information known to the Court, Ms. Bolger and her counsel withdrew from active participation in implementing the revised proposed settlement, in fact the opposite was true. Ms. Bolger was diligently pursing an application with Blue Hub

Capital and anticipated that she would succeed with that application. However, she and her counsel knew it would take more time than Chase was willing to allow at that point in time. It was not for a lack of interest but instead due to an impasse over the "drop dead" provision upon which Chase insisted that the parties drifted apart rather than followed through with the revised tentative settlement. Nonetheless, the whole time, even after the parties reached an impasse, Ms. Bolger continued to pursue the Blue Hub Sun refinancing, and Debtor/Plaintiff responded to the Chase Interrogatories by the deadline imposed by the Court. She did not have any documents to produce since all the documents requested tracked almost word for word with the Interrogatories and would either have been in Chase's possession, not hers (and she had not propounded discovery during the settlement process), or were a matter of public record and therefore not a proper subject for a document request. Ms. Bolger's concerns about the amount of time it would take Blue Hub Sun to approve her application were well founded. She was finally approved, but it took until January, 2020, by which time she would have long since had to vacate her home and small farm of 22 years if she had accepted the Chase proposal.

     As the Court is aware, faced with an October 11, 2019 Sheriff's Sale and the loss of her home and small farm, Ms. Bolger filed a second Chapter 13 case when Chase refused to postpone the Sale. She assumed that either Chase would agree to implement the settlement once she had the Blue Hub refinancing in place, or Adv. Proc. No. 13-00669-amc would either continue, or be transferred to the new Chapter 13 case, since it was clear the Amended Complaint set forth cognizable causes of action and had not been adjudicated. However, on December 13, 2019, without any discussion with Debtor/Plaintiff, Chase filed a Motion for Relief from the Automatic Stay in the Debtor's new main bankruptcy case, and a Motion to Dismiss Adv. Proc. No. 13-00669-amc.

     There were no underlying grounds for either Motion. It is noteworthy that Chase never took any action for five months after it received the discovery responses from Plaintiff, never e-mailed, called or wrote a letter complaining that the responses were inadequate. Only when faced with the Plaintiff's continuing efforts to achieve a just remedy for having been a victim caught up in a major foreclosure rescue scam did Chase decide that it could now complain – five months later – that Plaintiff had not adequately responded to the discovery requests. , which Chase would have learned had they contacted the Debtor/Plaintiff

     Given the long history of the relationships among the parties, dating back to 2005 and 2007, and of Adv. Proc. No. 13-00669-amc, and the implications of certain Court mandates in the Debtor/Plaintiff's prior main Chapter 13 bankruptcy case, Docket No. 13-13214-amc, a letter brief such as this, with only one week in which to

Case 19-16411-amc    Doc 39    Filed 02/18/20    Entered 02/18/20 23:59:26    Desc Main
Document      Page 4 of 6

complete it, cannot possibly do justice to the myriad of issues that should inform the Court's decisions with respect to these two crucial motions. It is also premature to fully address the issues, because it is not clear what evidence will ultimately constitute the factual record regarding the motions. Therefore, the Debtor/Plaintiff seeks leave to more thoroughly brief the issues at the conclusion of the March 3, 2020 continued hearing.

Debtor/Plaintiff believes that the Court wants at least the first two of the following issues to be addressed in this letter brief, and she believes that the other issues identified below are also relevant:

1. What specific rules relied upon by the Debtor/Plaintiff in filing each of the pending motions, and what standards should the Court apply in considering the motions?

2. What are the implications of Debtor/Plaintiff's having filed her answer to the Motion for Relief from the Automatic Stay the day before the January 7, 2020 hearing, and the fact that no evidentiary hearing took place, such that the Court, in effect, ruled by default for Chase?

3. What should be the impact on the Court's decision of the fact that the Motion for Relief from the Automatic Stay was granted without any evidentiary hearing, and therefore there was no evidence introduced by Chase to support either Motion?

4. Should relief from the automatic stay have been granted by default when the Debtor submitted an answer, albeit late, and had in fact continued to deposit the amount of the regular monthly mortgage payment to her counsel's client trust account for each post-petition month, and also obtained insurance and offered to pay any amount above the escrow portion of those payments directly for taxes that came due, so that Chase would not have to advance any more funds during the pendency of the action?

5. Should relief from the automatic stay have been granted by default when the Debtor submitted an answer, albeit late, and Chase failed to submit any evidence to support that basis alleged for relief from the automatic stay, and thus there is no record upon which to base the Order entered?

6. Even if Plaintiff's responses to the discovery requests were inadequate (not that she believes that), was dismissal of the Adv. Proc. too harsh of a sanction, especially without giving the Court the opportunity first to evaluate whether or not the responses were adequate?

7. Could the Court reasonably conclude in the January 7, 2020 Order dismissing Adv. Proc. No. 13-00669-amc that Plaintiff had inadequately responded to the discovery requests without a hearing in which the Court reviewed the requests and responses?

The essence of what is at issue in the litigation among the parties is a question of whether Suzanne Bolger should have been forced into a position in which she had to agree to a drop dead date to obtain refinancing other than from Chase, when less than one year out of a more than four year history of the parties' working together to find a solution to the victimization of Ms. Bolger, and perhaps Chase as well, was devoted to obtaining alternate financing in difficult circumstances. The Court should keep the parties on track to work this matter out, or let the Plaintiff have her day in Court before she loses her family's home for the last 22 years plus.

The Motion for Relief from the Automatic Stay simply had no merit whatsoever, in that the Debtor had been tendering payment into her counsel's client trust account and otherwise providing for adequate protection to Chase as set forth above.

Although not necessarily directly on point, the factors set forth by the Third Circuit in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863 (3rd Cir. 1984), and its progeny would dictate that dismissal is far too harsh a remedy for any shortcomings in Plaintiff's responses to discovery requests, especially with no alternatives pursued by Defendant prior to dismissal.

Sincerely yours,

Roger V. Ashodian

cc: Lily J. Becker, Esquire
    Richard Esterkin, Esquire
    Jacqueline Simon
    Suzanne Bolger